**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2078
_____

ALLISA D. GAY,
Executrix of the Estate of Carl E. Gay,
                                        Appellant

v.

A.O. SMITH CORPORATION, et al.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-19-cv-01311)
District Judge: Honorable William S. Stickman, IV
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 7, 2024

Before: JORDAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Opinion filed: May 24, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**FREEMAN**, *Circuit Judge*.

As part of his United States Navy training, Carl Gay observed the manufacture and assembly of equipment at a government-owned research laboratory operated by General Electric ("GE"). After he retired, he was diagnosed with mesothelioma. He sued GE, alleging that its actions proximately caused his illness. After his death, his daughter Alissa Gay became the substitute plaintiff, and the District Court held that her claims against GE are barred by derivative sovereign immunity. We will affirm.

## I

Carl Gay enlisted in the United States Navy in 1946. Between July 1954 and October 1955, he attended a training course on nuclear-powered submarines. During that course, he spent ten to fifteen percent of his time visiting the Knolls Atomic Power Laboratory ("KAPL") where he observed and learned about the equipment.

The federal government owned KAPL but GE operated it. GE did so pursuant to a government contract issued under the authority of the First War Powers Act of 1941 and the Atomic Energy Act of 1946. KAPL's purpose was to design nuclear reactors for the United States Navy, and GE's work there was "subject in all respects to the approval of the Contracting Officer" from the government. J.A. 293.

The Atomic Energy Commission ("the Commission") reviewed all plans and designs at KAPL, including materials specifications, components in the power plant, and building and facility plans. The contract required GE to hire and train KAPL workers "subject to the approval of the Contracting Officer." J.A. 297. During the relevant time

2

period, Admiral Hyman G. Rickover—an officer in the Commission's Naval Reactors Branch—directly oversaw KAPL's operation. In 1952, Rickover reiterated to the vice president of GE that "the responsibility for the design, development, operation, and other aspects of [KAPL] is vested in me." J.A. 363.

In June 2019, Gay was diagnosed with mesothelioma, a cancer that can form around the lungs due to asbestos exposure. In August 2019, he sued GE, arguing that it exposed him to asbestos at KAPL despite knowing of its risks.[1]

GE removed the case to federal court and later moved for summary judgment. The District Court held that GE had derivative sovereign immunity because it operated KAPL under the authority and direction of the United States government. On that basis, it granted summary judgment in GE's favor. Alissa Gay (who was then the substitute plaintiff) sought reconsideration, advancing a new argument that derivative sovereign immunity is inapplicable to matters within a contractor's discretion. The District Court denied her motion.

Gay timely appealed the grant of summary judgment and denial of reconsideration.

**II**[2]

We exercise plenary review over an order granting summary judgment. *Carley v. Wheeled Coach*, 991 F.2d 1117, 1118 (3d Cir. 1993). We review an order denying a

---

[1] Gay also sued over 150 other defendants, none of whom is a party to this appeal.

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

motion for reconsideration for an abuse of discretion. *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 186 (3d Cir. 2021).

## III

As a threshold matter, the parties disagree over the correct derivative immunity framework in this case. The District Court applied the test from *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), which GE argues was the correct test. Gay, on the other hand, urges us to analyze the case under the military contractor framework from *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

Both doctrines protect government contractors from liability if certain conditions are met. But it is an open question whether *Boyle* immunity is merely the descendant of *Yearsley* immunity, or if the two doctrines are distinct. *Compare Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1215 n.4 (3d Cir. 1989) (suggesting that *Yearsley* immunity was the predecessor to the modern government contractor defense), *with Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166–69 (2016) (analyzing a performance contract under *Yearsley* without discussing *Boyle*), *and* Br. of United States as Amicus Curiae at 24, *Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092 (9th Cir. 2022) (No. 20-56049), 2021 WL 1897312, at *24 (explaining that the "*Yearsley* defense" is "distinct" from the "government contractor defense" outlined in *Boyle*). We need not resolve this question, as GE is entitled to sovereign immunity under either test.

4

A

Under *Yearsley*, a contractor is derivatively immune from liability if (1) its "authority to carry out the project was validly conferred" by Congress and (2) its work was "authorized and directed" by the federal government. 309 U.S. at 20–21. But if a contractor "exceed[s] [its] authority" or fails to "compl[y] with all federal directions," it cannot claim *Yearsley* immunity. *Campbell-Ewald*, 577 U.S. at 167 & n.7.

Gay claims that GE is not entitled to derivative sovereign immunity because the government did not "authorize and direct" its failure to warn him about asbestos. Specifically, he cites testimony from John Roderick, GE's corporate representative, who was "not aware of any . . . order from the Navy that would have precluded General Electric from giving [asbestos] safety warnings to the sailors that were [at KAPL]." J.A. 1807.

But Gay does not dispute that GE's main activities at KAPL—the design and manufacture of nuclear reactors and vessels—*were* authorized and directed by the government under validly conferred authority. Indeed, the record demonstrates that GE's contract with the Navy was "negotiated and executed under the First War Powers Act [of] 1941," J.A. 290, and later adopted by the Atomic Energy Commission "pursuant to the authority conferred by the Atomic Energy Act of 1946," J.A. 14–15. Gay has presented no evidence that GE deviated from the Navy's instructions or exceeded its contractual authority. Therefore, we conclude that GE was entitled to derivative sovereign immunity under *Yearsley*.

B

Even if *Boyle* were the proper analytical framework,[3] the result would be the same.

In *Boyle*, a case involving the procurement of military equipment, the Supreme Court held:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

487 U.S. at 512.

The first element is satisfied here. As discussed above, the Navy was deeply involved in the planning and designing process for all equipment at KAPL. And all of GE's proposals related to KAPL required government approval.

The second element is also satisfied. Gay alleges that GE failed to warn sailors about asbestos, not that GE failed to adhere to any of the Navy's design specifications. The crux of Gay's argument is that the Navy gave *no* specifications about warnings—not that GE contravened them.

Finally, the third element is also met. While the record contains evidence suggesting that both GE and the Navy were aware of some dangers posed by asbestos, it

---

[3] *Boyle* primarily applies to cases about design defects in military procurement contracts, while this case focuses on negligence in a performance contract. *See Boyle*, 487 U.S. at 502 ("This case requires us to decide when a contractor providing military equipment to the Federal Government can be held liable under state tort law for injury caused by a design defect."). The Supreme Court's decision in *Campbell-Ewald* highlighted this distinction. There, the Court considered a contractor's claim of derivative sovereign immunity in executing a performance contract without mentioning *Boyle*. *See Campbell-Ewald*, 577 U.S. at 166–69.

6

does not demonstrate that GE knew *more* than the Navy. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 814–15 (3d Cir. 2016) (concluding that the third element was satisfied because the defendant "did not have any superior knowledge that it withheld from the government"). GE therefore could not have notified the government of any dangers that the government was unaware of.

For these reasons, we conclude that GE would be entitled to government contractor immunity under *Boyle*.

**IV**

Lastly, the District Court did not abuse its discretion in denying Gay's motion for reconsideration. To prevail on a motion for reconsideration, the movant must demonstrate "(1) an intervening change in the controlling law; (2) new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or prevent manifest injustice." *Gibson*, 994 F.3d at 190.

In her motion, Gay argued that GE can claim derivative sovereign immunity only if the government specifically directed it to engage in the tort, leaving the contractor with no discretion to behave otherwise. But neither this Court nor the Supreme Court has defined derivative sovereign immunity so narrowly. In *Yearsley*, it was enough that the contractor's work was "done pursuant to a contract with the United States Government, and under the direction of the Secretary of War and the supervision of the Chief of Engineers of the United States." 309 U.S. at 19. Likewise, it is enough here that GE carried out its obligations according to the terms of a contract with the Navy and pursuant

7

to government oversight.  *See Campbell-Ewald*, 577 U.S. at 167 n.7 ("Critical in *Yearsley* was . . . the contractor's performance in compliance with all federal directions.").

Moreover, even if derivative immunity could apply only when a contractor lacks discretion, Gay still would not prevail.  The undisputed facts show that the government closely scrutinized and controlled GE's operations at KAPL.  Admiral Rickover exercised responsibility and control over the facility's management, and GE was required to adhere to the government's specifications at all times.  The District Court therefore did not abuse its discretion in denying Gay's motion for reconsideration.

\*        \*        \*

For the foregoing reasons, we will affirm the judgment of the District Court.